D. Justin Harelik (SBN 236710)
Price Law Group, APC
15760 Ventura Blvd., Suite 1100
Encino, CA  91436
(818) 995-4540 Telephone
(818) 995-9277 Fax

Attorneys for Mark E. Hallgren,
Debtor

### UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO DIVISION

|  |  |
|---|---|
| In re:<br><br><br><br>MARK E. HALLGREN,<br><br><br><br><br><br><br>                    Debtor. | Case No: 09-03586-13<br><br>Chapter 13<br><br>**NOTICE OF MOTION AND MOTION FOR ORDERS DETERMINING VALUE OF REAL PROPERTY, EXTENT OF SECURED CLAIMS, AND EXTINGUISHING THE LIEN OF BANK OF AMERICA; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT**<br><br>Hearing Information<br>Date:  August 18, 2009<br>Time:  10:00 a.m.<br>Place: 325 West F Street,<br>       San Diego, California<br>       92101<br>       Department 2, Room 118 |

**TO THE HONORABLE LOUISE D. ADLER, UNITED STATES BANKRUPTCY JUDGE; CREDITOR BANK OF AMERICA; CHAPTER 13 TRUSTEE; AND ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that Debtor, MARK E. HALLGREN, moves the Court for orders:

//

1.    Determining that the value of that certain real property commonly known as 544 Veronica Pl., Escondido, CA 92027 (the "Real Property") was $210,000.00 as of the date of filing;

2.    Determining that the secured claim of Provident Funding ("Provident") with respect to the Real Property is senior to that of Bank of America ("Respondent") and that the amount of Provident's secured claim exceeds the value of the Real Property;

3.    Determining that RESPONDENT's claim is wholly unsecured; and

4.    Finding that modification of RESPONDENT's claim is therefore appropriate under 11 U.S.C. §1322(b)(2), that the lien of RESPONDENT is extinguished and that RESPONDENT may be provided for as an unsecured claim in the debtor's Chapter 13 plan.

**DEADLINE FOR OPPOSITION PAPERS:**

Please taken further notice that Local Bankruptcy Rule 9013-1(a)(7) provides:

"Opposition/Joinders/Responses to Motions. Except as set forth in Local Bankruptcy Rule 9013-1(e) with regard to motions for summary judgment or partial summary adjudication, or unless otherwise ordered by the court, each interested party opposing, joining, or responding to the motion shall file and serve not later than 14 days before the date designated for hearing either:

(A) A brief but complete written statement of all reasons in opposition thereto or in support or joinder thereof, and answering memorandum of points and authorities, declarations and copies of all photographs and documentary evidence on which the responding party intends to rely. The opposing papers shall advise the adverse party that any reply to the opposition shall be filed with the court and served on the opposing party not later than 7 calendar days (not excluding Saturdays, Sundays, and legal holidays) prior to the hearing on the motion; or

(B) A written statement that the motion will not be opposed. Local Bankruptcy Rule 9013-1(a)(11) provides:

"Failure to File Required Papers. Papers not timely filed and served may be deemed by the court to be consent to the granting or denial of the motion, as the case may be."

**Wherefore**, Debtor requests that the Court find that the lien of RESPONDENT is wholly unsecured and that the lien be extinguished.

DATED: 6/11/09                          Price Law Group, APC


                                        By: _____
                                        D. Justin Harelik
                                        Attorneys for Debtor

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### BACKGROUND FACTS

MARK E. HALLGREN ("Debtor") filed this Chapter 13 case on March 24, 2009.  Debtor owned and resided at 544 Veronica Pl., Escondido, CA 92027 (the "Real Property").  According to the full appraisal report, the Real Property had a value of $210,000.00. On the date of filing, the first deed of trust encumbered the Real Property in favor of Provident of $249,000.00. A second deed of trust encumbered the Real Property in favor of RESPONDENT which had a balance of $125,866.00.

### II.

### AUTHORITIES

**AN APPRAISAL SHOWS THAT THE VALUE OF THE REAL PROPERTY WAS $210,000.00 AS OF THE FILING DATE.**

Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure (hereinafter "FRBP"), "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest, on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct …"

In this case, Debtor has provided the Court with a full appraisal of the Real Property showing a market value of $210,000.00. The appraisal was completed merely 40 days before the filing of this case and was prepared by a disinterested, duly qualified expert within the meaning of Fed. R. Evid. 702.  Accordingly, Debtor requests that the Court determine the value of the Real Property to be $210,000.00.

1  **GIVEN THE VALUE OF THE REAL PROPERTY, THE FIRST DEED OF TRUST IS**

2  **UNDERSECURED AND THE SECOND DEED OF TRUST IS WHOLLY UNSECURED.**

3  FRBP 3012 implements Section 506(a) of the Bankruptcy Code with

4  respect to valuation of a secured claim in order to determine the

5  extent to which it is secured and the extent to which it is

6  unsecured.    Section 506(a) provides:

7       "[a]n allowed claim of a creditor secured by a lien on

8       property in which the estate has an interest,… is a secured

9       claim to the extent of the value of such creditor's

10      interest in the estate's interest in such property,… and is

11      an unsecured claim to the extent that the value of such

12      creditor's interest … is less than the amount of such

13      allowed claim."

14  Additionally, section 506(d) states that, "[t]o the extent that

15  a lien secures a claim against the debtor that it is not an allowed

16  secured claim, such lien is void."

17  Section 506 is a section of general applicability and a Chapter

18  13 case allows bifurcation of a claim into secured and unsecured

19  portions.  Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 22

20  C.B.C. 561 (3rd Cir. 1990).

21  **AS A WHOLLY UNSECURED LIENHOLDER, RESPONDENT'S RIGHTS MAY BE**

22  **MODIFIED UNDER 11 U.S.C. §1322(B)(2) AND IT MAY BE TREATED AS AN**

23  **UNSECURED CREDITOR.**

24  Many courts, even prior to the passage of the BAPCPA of 2005,

25  had already held that Nobleman v. American Savings Bank, 13 S.Ct.

26  2106 (1993) was inapplicable when senior liens were in excess of the

27  fair market value of the property.    Therefore, the instant case would

28

-5-

1  fall outside the protection otherwise afforded by Nobleman, because
2  claimant's lien is wholly unsecured.

3       The passage of the Bankruptcy Reform Act of 1994 did not change
4  the ability of lien stripping of a wholly unsecured creditor.  It
5  merely provided that a loan which fully matured prior to the filing
6  of the Chapter 13 petition, or a loan which matures during the life
7  of the plan, may be paid through the plan.  11 U.S.C. §1322(b)(2).

8       Under Nobleman, a lien cannot be stripped if any portion of the
9  interest was secured.  Thus, by implication, when a lien is wholly
10 unsecured, it can be stripped.  Courts have consistently
11 distinguished between Nobleman and facts involving a wholly unsecured
12 lien holder.  In fact, most reported decisions have rejected the
13 proposition that Nobleman prohibits modification of a totally
14 unsecured lien on a chapter 13 debtor's principal residence.  These
15 Courts, along with the 9th Circuit Bankruptcy Appellate Panel,
16 interpret Nobleman to require the existence of an allowable secured
17 claim as the predicate for the protection form modification in 11
18 U.S.C. §1322(b)(2).

19      In the 9th Circuit Bankruptcy Appellate Panel Case, In re Lam,
20 the Court held that:

> "The Nobleman decision holding that section 1322(b) bars a
> chapter 13 plan from modifying the rights of holders of claims,
> secured only by the debtor's principal residence, does not apply
> to holders of totally unsecured claims.  The extension of the
> protections of section 1322(b) to wholly unsecured lien holders
> is contrary to the provisions of the bankruptcy code allowing
> dischargeability of unsecured claims."

26      In In re Lam, 121 B.R. 36, 41 (9th Cir. B.A.P. 1997), the Court
27 concurred with the holding of several cases that permitted

1  modification of secured creditor's claims that were wholly unsecured.

2  <u>Id.</u>, at 41.

3      Yet another California case has a similar holding to <u>In re Lam</u>.

4  The Court in <u>In re Geyer</u> sustained a debtor's motion to avoid a lien

5  brought under Bankruptcy Code Section 506(d) and held that a Chapter

6  13 debtor may strip off a lien on his or her primary residence when

7  the lien holder's interest is totally unsecured, stating that:

8      [T]he term 'secured claim' as used in section 1322(b)(2) has the
       same meaning as the term "secured claim" in section 506(a).
9      Unless there is some equity to which the creditor's lien
       attaches, there is no allowed secured claim and no entitlement
10     to the protection against modification contained in section
       1322(b)(2).  A chapter 13 debtor may 'strip-off' a lien on his
11     or her primary residence under the plan or under section 506(d)
       when the lien holder's interest is totally unsecured.
12

13  <u>In re Geyer</u>, 203 B.R. 726, 729 (S.D. Cal. 1996).

14
15      The Court's ruling in the case at bar should be unaffected by

16  the landmark Supreme Court case in <u>Nobleman</u>.  In <u>Nobleman</u>, Justice

17  Thomas held that Code Section 1322 (b)(2) prohibits splitting an

18  undersecured home mortgage holder's claim into its secured and

19  unsecured portions for purposes of confirmation of a Chapter 13 Plan.

20  <u>Nobleman</u>, 13 S.Ct. 2106.  Unlike the case at bar, in <u>Nobleman</u>, the

21  lien to be stripped was the holder of the first deed of trust for

22  $71,335.00, and the debtor's principal residence was worth

23  $23,500.00.  Thus, the bank's claim was at least partially secured by

24  the debtor's home.

25      Here, RESPONDENT's lien is not the first but the second deed of

26  trust.  Further, there can be no reasonable contention that any part

27  of the second deed of trust is secured.  Thus, the facts, reasoning

28  and holding of <u>Nobleman</u> are inapplicable to this case.

In this case, the Real Property is Debtor's principal residence which has a market value of $210,000.00. Provident's first deed of trust has a balance of $249,000.00. Thus, RESPONDENT's secured interest in the Real Property is zero because there is absolutely no equity to which its lien could attach.

Because RESPONDENT possesses a totally unsecured claim on Debtor's residence and it does not have an allowable secured claim, RESPONDENT cannot seek protection from modification under 11 U.S.C. §1322 (b)(2) and Debtor may modify the claim and avoid claimant's lien. Therefore, RESPONDENT's second deed of trust should be extinguished, reconveyed, and treated as unsecured for purposes of this Chapter 13 proceeding.

**IN RE DEWSNUP IS DISTINGUISHED FROM THE LIEN STRIPPING REQUESTED IN THIS CHAPTER 13 CASE.**

The Chapter 7 case Dewsnup v. Tim, 502 U.S. 410, 112 S. Ct. 773, 116 L.Ed.2d 903 (1992) has no application to this Chapter 13 case. The relevant cases are those Chapter 13 cases cited by Debtor above which turn on interpretations of §1322(b)(2). Those interpretations conclude that a Chapter 13 plan may modify the rights of claim holders, other than those **secured** only by a security interest in real property that is the debtors' principal residence.

Section 1322(b)(2), in light of §506(a), does not preclude modification by a Chapter 13 Plan of the rights of holders of unsecured claims even those of holders of deeds of trust which are completely unsecured.

To this end, Justice Scalia, in his dissent in Dewsnup, pointed out the difference between lien stripping in a Chapter 7 case and lien stripping in a Chapter 13 case when he stated that,

-8-

1    "Respondents assume, for example, that a debtor in a
     Chapter 13 cannot strip down a mortgage placed on the
2    debtor's home,; but that assumption may beg the very
     question the Court answers today.   True, Section 1322
3    (b)(2) provides that Chapter 13 filers may not "modify the
     rights of secured claims", that are "secured only by a
4    security interest in real property that is the debtor's
     principal residence.   But this can be and has been read, in
5    light of Section 506(a), to prohibit modification of the
     mortgagee's rights only with respect to the operation of
6    his claim that is deemed secured under the Code.   See,
     e.g., In re Hart 923 F.2d 1410, 1415 (CA 10 1991); Wilson
7    v. Commonwealth Mortgage Corp., 895 F.2d 123, 127 CA3
     1990)."
8

9

10   Dewsnup, 502 U.S. 410, 428, 112 S. Ct. 773, 784.

11        In Denver v. Internal Revenue Service, 164 B.R. 132 (C.D. Cal.

12   1994), the Court held that in spite of Dewsnup, stripping an IRS lien

13   on a principal residence is permissible in a Chapter 11 case.   The

14   Court noted that while under Dewsnup, Chapter 7 debtors cannot use

15   §506 to strip liens on an undersecured claim, the Supreme Court

16   specifically reserved the question as to the applicability of its

17   ruling in Dewsnup to cases under the reorganization chapters.   Id.,

18   at 133.   The Denver Court discussed the issue of lien stripping in

19   Chapter 13 cases and cited the 10th Circuit case of In re Hart wherein

20   the Court reasoned:

21        The dispositive issue in this case is whether Eastland's
          undersecured loan may be bifurcated into two claims by
22        applying general principals of Section 506(a) to the
          mortgage and then protecting only the secured claim by
23        provisions of Section 1322(b).   We believe it can.

24   In re Hart, 923 F.2d 1410, 1413 (10th Cir. 1991).

25

26        After citing In re Hart, in Denver the Court went on to state:
          "If Section 506 does not permit debtors to bifurcate
27        undersecured claims and strip down liens to their
          collateral value, then all secured creditors would be freed
28        of any concern that debtors could reduce the amount of

their liens while retaining property.  If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322.  As Justice Stevens' concurring opinion in <u>Nobleman</u> emphasized, the legislative history of Section 1322(b)(2) reflects Congressional desire to provide special protections to residential lenders."  <u>Denver</u>, at 141.

Accordingly, the language of the relevant Bankruptcy Code sections and the decisions interpreting those sections warrants a finding that RESPONDENT's lien arising from the deed of trust may be extinguished and that its claim may be treated as general unsecured in Debtor's plan.

III.

<u>CONCLUSION</u>

Based on the foregoing, Debtor requests that the Court enter an order which:

1.    Establishes the value of the Real Property to be $210,000.00;

2.    Finds that Provident's security interest is senior to RESPONDENT in an amount that exceeds the value of the Real Property;

3.    Concludes that RESPONDENT's claim is wholly unsecured; and

4.    Extinguishes RESPONDENT's lien and permits modification of the claim under §1322(b)(2).

DATED: 6/11/09

Price Law Group, APC

By: _____
D. Justin Harelik
Attorneys for Debtor

1   D. Justin Harelik SBN 236710
    Price Law Group, APC
2   15760 Ventura Blvd., Suite 1100
    Encino, CA 91436
3   (818) 995-4540 Telephone
    (818) 995-9277 Fax

4   Attorneys for Debtors

5

6               UNITED STATES BANKRUPTCY COURT

7      SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO DIVISION

8   In re:                     Case No: 09-03586-13

9    MARK E. HALLGREN,

10                     Chapter 13

11         Debtor         Date:  May 5th, 2009
                       Time:  10:00 a.m.
12                     Place: 325 West F Street, San Diego,
                     California 92101
13                     Department 2, Room 118

14

15      **EXHIBITS TO DEBTOR'S MOTION TO VALUE COLLATERAL**

16

| Exhibit No. | Document Title | Page |
|---|---|---|
| A | Declaration of Debtor | 2-3 |
| B | Appraisal | 5-23 |
| C | Declaration of Appraiser | 25-26 |
| D | Provident Mortgage payment coupon and Deed of Trust | 28-30 |
| E | Bank of America Mortgage statements and Deed of Trust | 32-34 |

25  Dated:  6/11/09

                                    D. Justin Harelik
                                  Attorney for Debtor

# EXHIBIT A

DECLARATION OF DEBTOR

I, MARK E. HALLGREN, declare:

1.    I am the debtor is Chapter 13 case number 09-03586-13.  I have personal knowledge of the facts stated in this declaration and could and would testify thereto if called as a witness.

2.    I filed this case on March 24, 2009.  I am the owner of real property located at 544 Veronica Pl., Escondido, CA 92027 (the "Real Property").  I live on the Real Property and disclosed it in my bankruptcy schedules.  A true and correct copy of my Schedule of Real Property is attached as Exhibit "A" and is incorporated herein by this reference.

3.    The Real Property was subject to a first deed of trust in favor of Provident Funding which had a balance of $249,000.00 as of the date of filing.  I do not dispute this amount.  A true and correct copy of Provident's mortgage statement is attached as Exhibit "B" and is incorporated herein by this reference.

4.    The Real Property was also subject to a second deed of trust in favor of Bank of America (Herein after "Respondent") which had a balance of $125,866.00 as of the filing date.  A true and correct copy of RESPONDENT's mortgage statement is attached as Exhibit "C" and is incorporated herein by this reference.

5.    On or about Feb. 11, 2009, I hired FORSYTHE APPRASIALS, LLC to provide an opinion of the fair market value of the Real Property. I have no personal or business relationship with any employee of FORSYTHE APPRASIALS, LLC.

//

//

//

6. Based on my knowledge as a homeowner of my home and of my
neighborhood, I believe my home to have been worth $210,000.00 at
the time of filing.

   I declare under penalty of perjury that the foregoing is true
and correct.   Executed on March _30 TH_, 2009, at _544 lorowea Pl. Escondido_
California.

_Mark E. Halloran_
DEBTOR

# EXHIBIT B



# Forsythe
## APPRAISALS, LLC

File No. 93400265

*Providing Quality Appraisals and Unparalleled Service*
*Since 1840*



**Client:** Mark Hallgren
544 Veronica Place
Escondido, CA 92027

**Borrower:** Hallgren, Mark E.

**Address:** 544 Veronica Pl
Escondido, CA 92027

**Value:** $210,000

**Date:** February 12, 2009

**Appraiser:** Joseph Weaver

**License:** AR040244

*The Nation's Largest Independent Provider of Residential Appraisals*
www.forsytheappraisals.com

9645 Erms Road, Suite #205 San Diego, CA 92131

Forsythe Appraisals, LLC

## Uniform Residential Appraisal Report

File No 99400285

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 544 Veronica Pl | City Escondido   State CA   Zip Code 92027 |
| Borrower Hallgren, Mark E | Owner of Public Record Hallgren, Mark E   County San Diego |
| Legal Description Lot 9, Tract 11798, Escondido Tr 657 | |
| Assessor's Parcel # 231-800-09-00 | Tax Year 2008   R.E. Taxes $ 2,756 |
| Neighborhood Name Escondido | Map Reference 1110-D8   Census Tract 202.10 |

Occupant [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ N/A    [ ] PUD   HOA $ N/A   [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Fair Market Value

Lender/Client Mark Hallgren   Address 544 Veronica Place, Escondido, CA 92027

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). According to MLS and owner the property is not currently listed for sale and there have been no listings in the previous 12 months.

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

Contract Price $ N/A   Date of Contract N/A   Is the property seller the owner of public record? [ ] Yes [ ] No   Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid.   $ _____ N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | | | | PRICE $(000) | AGE (yrs) | One-Unit 75 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | | 100 Low 0 | 2-4 Unit 5 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | | | | 114 Low 0 | Multi-Family 5 % |
| | | | | | 675 High 60 | Commercial 10 % |
| | | | | | 225 Pred. 20 | Other Vacant 5 % |

Neighborhood Boundaries Dixon Lake to the north, Jed Road to the east, Bear Valley Parkway to the south, and Meywood Street to the west.

Neighborhood Description The subject neighborhood is considered a outer growth ring of Escondido. N Citrus Avenue, a local traffic artery, is within one mile and offers access to schools, shopping, entertainment, and employment centers. The subject neighborhood is in close proximity to Dixon Lake and Interstate 15 which gives added appeal.

Market Conditions (including support for the above conclusions) The subject is located in the San Diego MLS marketing district. Property values appear to be declining at this time per market analysis. Demand for the area is fair. Properties are currently selling with an average marketing time of 76 days. There is an influx of foreclosures/short sales in the neighborhood creating declining values.

Dimensions See Attached Plat Map   Area 157,687 SqFt   Shape Irregular   View Residential-Average

Specific Zoning Classification R-1 (Per MLS)   Zoning Description Sngl Fam Residential

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | | [X] |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone X   FEMA Map # 060290081BF   FEMA Map Date 06/19/1997

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No   If Yes, describe. The subject's site has no apparent adverse site conditions or external factors affecting the subject's marketability.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls Concrete/Avg | | Floors Tile,Crpt/Avg |
| # of Stories 1 | [ ] Full Basement [ ] Partial Basement | | Exterior Walls Stucco/Avg | | Walls Drywall/Avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area None sq. ft. | | Roof Surface Tile/Avg | | Trim/Finish Pnt Wd/Avg |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | | Gutters & Downspouts Diverted/Avg | | Bath Floor Tile/Avg |
| Design (Style) Conventional | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type Slide,Case/Avg | | Bath Wainscot Fiberglass/Avg |
| Year Built 1988 | Evidence of [ ] Infestation | | Storm Sash/Insulated None-Typical | | Car Storage [ ] None |
| Effective Age (Yrs) 12 | [ ] Dampness [ ] Settlement | | Screens Windows/Avg | | [X] Driveway # of Cars 2+ |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities | | Driveway Surface Concrete |
| [ ] Drop Stair [ ] Stairs | [ ] Other [ ] Fuel Gas | | [X] Fireplace(s) # 1 [X] Fence Rear | | [X] Garage # of Cars 2 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | | [X] Patio/Deck Rear [ ] Porch Front | | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | | [ ] Pool [ ] Other | | [ ] Att. [ ] Det. [ ] Built-In |

Appliances [P] Refrigerator [P] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe)

Finished area above grade contains:   7 Rooms   3 Bedrooms   2 Bath(s)   1297 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) Additional features include: vaulted ceilings, built in speakers in the living room, and a covered outdoor bar area next to the patio.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.) The subject property has received average maintenance and is not in need of any immediate repairs.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No   If Yes, describe. There are no readily observable items that were considered to be a physical deficiency. The appraiser is not qualified to determine if the conditions effect the livability, soundness, or structural integrity of the property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No   If No, describe. The subject does conform to the surrounding homes in the area. There are no observed functional or external obsolescence.

Freddie Mac Form 70 March 2005   Page 1 of 6   Fannie Mae Form 1004 March 2005

Forsythe Appraisals, LLC

## Uniform Residential Appraisal Report

File No. 93400286

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| There are  13   comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 130,000  to $ 270,000 |  |  |  |  |
| There are  33   comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 170,000  to $ 345,000 |  |  |  |  |
| Address | 544 Veronica Pl Escondido, CA 92027 | 2734 Diez Gln Escondido, CA 92027 | 2722 Diez Gln Escondido, CA 92027 | 464 Las Brisas Dr Escondido, CA 92027 |
| Proximity to Subject |  | 0.50 miles SE | 0.50 miles SE | 0.44 miles E |
| Sale Price | $ N/A | $ 200,000 | $ 209,000 | $ 245,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 154.68 sq. ft. | $ 202.52 sq. ft. | $ 180.15 sq. ft. |
| Data Source(s) |  | MLS#080069703 | MLS#080073577 | MLS#080070394 |
| Verification Source(s) |  | Doc#629086 | Doc#032221 | Doc#9856 |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION    +(-)$ Adjustment | DESCRIPTION    +(-)$ Adjustment | DESCRIPTION    +(-)$ Adjustment |
| Sale or Financing Concessions |  | Cnvtl, FHA Seller Paid Cost        0 | FHA None disclosed | Cnvtl Credit to buyer      -5,000 |
| Date of Sale/Time |  | 12/09/2008 COE     -6,000 | 12/11/2008 COE     -6,300 | 01/09/2009 COE        0 |
| Location | Suburban | Suburban | Suburban | Suburban |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 7,500 SqFt | 6,000 SqFt | 4,492 SqFt | 5,614 SqFt |
| View | Residential-Avg | Similar | Similar | Similar |
| Design (Style) | Conventional | Conventional | Conventional | Conventional |
| Quality of Construction | Average | Similar | Similar | Similar |
| Actual Age | 21 Yrs. | 23 Yrs. | 23 Yrs. | 29 Yrs. |
| Condition | Average | Repair Cost Inc.     0 | Similar | Good      -30,000 |
| Above Grade | Total Bdrms Baths 7  3   2 | Total Bdrms Baths 7  3   2 | Total Bdrms Baths 6  3   2 | Total Bdrms Baths 7  3   2 |
| Gross Living Area | 25.00 sq. ft. | 1,267 sq. ft. | 1,293 sq. ft. | 1,032 sq. ft.    +6,400 | 1,360 sq. ft.      0 |
| Basement & Finished Rooms Below Grade | None N/A | None N/A | None N/A | None N/A |
| Functional Utility | Average | Average | Average | Average |
| Heating/Cooling | FWA C/Air | Similar | Similar | Similar |
| Energy Efficient Items | Average | Average | Average | Average |
| Garage/Carport | 2 Car Garage | 2 Car Garage | 2 Car Garage | 2 Car Garage |
| Porch/Patio/Deck | Porch/Patio | Similar | Similar | Similar |
| Days on Market | N/A | 31 DOM | 14 DOM | 43 DOM |
| Fireplace | 1 FP | None      +1,000 | None      +1,000 | 1 FP |
| Other | None | Interior Landscape  +15,000 | None | None |
| Net Adjustment (Total) |  | [X]+ [ ]- $ 10,000 | [X]+ [ ]- $ 1,100 | [ ]+ [X]- $ 35,000 |
| Adjusted Sale Price of Comparables |  | Net Adj  5.0% Gross Adj 11.0% $ 210,000 | Net Adj  0.5% Gross Adj  6.8% $ 210,100 | Net Adj -14.3% Gross Adj 14.3% $ 210,000 |

[X] I did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  MLS/Realist
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year or to the date of sale of the comparable sale.
Data source(s)  MLS/Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 06/25/2001 | None | None | 03/03/2009 |
| Price of Prior Sale/Transfer | $227,500 | Noted | Noted | $294,545 |
| Data Source(s) | Realist | Realist | Realist | Realist |
| Effective Date of Data Source(s) | 02/05/2009 | 02/05/2009 | 02/05/2009 | 02/05/2009 |

Analysis of prior sales or transfer history of the subject property and comparable sales  There were no prior sales of the subject property in the last three years or comparables in the last year.

Summary of Sales Comparison Approach  All comparables are similar homes located in the subject's immediate competitive market area. Comparable one and two are adjusted for being a declining market at 3%. Comparable one included seller paid costs, but it was for repair items and no adjustments were necessary. Comparable three supports the current market and no adjustment is warranted. It has a remodeled kitchen and updated condition. Comparable four is adjusted at 4% based on the list to sales prices in the neighborhood. It needs minor interior repairs and is adjusted for said condition. See "Addendum " for additional comments on the Sale Comparison Approach.

Indicated Value by Sales Comparison Approach $ 210,000

Indicated Value by: Sales Comparison Approach $ 210,000   Cost Approach (if developed) $ 0   Income Approach (if developed) $
The sales comparison approach is the most relevant analysis in this assignment and the appraiser has determined that there is sufficient comparable market to develop a credible opinion of value in this approach alone. For this reason, the cost approach has not been considered. The cost approach has been developed as supporting analysis.

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  The appraisal is being made "as is". No liability is assumed for the structural or mechanical elements of the property.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 210,000 , as of  02/12/2009 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 1004 March 2005
                                                                    Page 2 of 6                                            1004_05 8/05ba

Forsythe Appraisals, LLC

Forsythe Appraisals, LLC

## Uniform Residential Appraisal Report

File No. 93400285

**Subject Property Identification:**

The appraiser has viewed all readily accessible areas of the dwelling (and any other building structure located on the property). This complete visual inspection is not intended to be the same depth or for the same purpose as a home inspection. The appraiser has viewed the property solely for valuation purposes and to observe property characteristics that a typical purchaser would consider in their decision making process, as well as those items outlined in the assumptions and limited conditions and certification to this appraisal.

**Sources of Information.**

The appraisal is based on the information gathered from public records; viewing of the subject property, neighborhood and comparable properties; and other sources specifically identified in this report. When conflicting information has been discovered, the sources deemed most reliable have been used.

**Intended Users:**

The Intended User of this appraisal report is the Lender/Client. The Intended user is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  In compliance with certification #4, I have developed my opinion of the market value of the real property that is subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ..................................... = $ | |
|---|---|---|
| Source of cost data N/A | Dwelling | 1,287 Sq. Ft. @ $ | ..................... = $ | 0 |
| Quality rating from cost service N/A   Effective date of cost data N/A | | Sq. Ft. @ $ | ..................... = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | |
| N/A | Garage/Carport | 441 Sq. Ft. @ $ | ..................... = $ | 0 |
| | Total Estimate of Cost-New | ..................... = $ | 0 |
| | Less    Physical | Functional | External | | |
| | Depreciation | = $( | 0) |
| | Depreciated Cost of Improvements ................................. = $ | 0 |
| | "As Is" Value of Site Improvements ..................... = $ | |
| Estimated Remaining Economic Life (HUD and VA only) | N/A Years | INDICATED VALUE BY COST APPROACH .................... = $ | 0 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?  ☐ Yes  ☐ No   If Yes, date of conversion

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005                    Produced using ACI software, 800.234.8727 www.aciweb.com                    Fannie Mae Form 1004 March 2005
                                                    Page 3 of 6                                                              1004_05 060405

Forsythe Appraisals, LLC

## Uniform Residential Appraisal Report

File No. 93400285

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Forsythe Appraisals, LLC

## Uniform Residential Appraisal Report

File No. 93400285

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.   I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.   I have knowledge and experience in appraising this type of property in this market area.

12.   I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.   I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.   I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.   I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.   I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.   I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.   My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.   I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.   I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Forsythe Appraisals, LLC

## Uniform Residential Appraisal Report

File No. 93400285

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Joseph Nsalver | Name |
| Company Name Forsythe Appraisals, LLC | Company Name |
| Company Address 9845 Erma Road, Suite #205 | Company Address |
| San Diego, CA 92121 | |
| Telephone Number 858-271-0790 | Telephone Number |
| Email Address sandiego@sandiego.forsytheappraisals.com | Email Address |
| Date of Signature and Report 02/12/2009 | Date of Signature |
| Effective Date of Appraisal 02/12/2009 | State Certification # |
| State Certification # AR040244 | or State License # |
| or State License # | State |
| or Other (describe)            State # | Expiration Date of Certification or License |
| State CA | |
| Expiration Date of Certification or License 05/08/2010 | |

ADDRESS OF PROPERTY APPRAISED
544 Veronica Pl
Escondido, CA 92027

APPRAISED VALUE OF SUBJECT PROPERTY $ 210,000

LENDER/CLIENT
Name
Company Name Mark Halligan
Company Address 544 Veronica Place
Escondido, CA 92027
Email Address

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Forsythe Appraisals, LLC

## Uniform Residential Appraisal Report

File No. 93400285

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 544 Veronica Pl | 2175 Weatherby Ave | | | | | |
| | Escondido, CA 92027 | Escondido, CA 92027 | | | | | |
| Proximity to Subject | | 0.48 miles SW | | | | | |
| Sale Price | $ N/A | | $ 204,900 | | $ | | $ |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 158.98 sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | MLS#090000906 | | | | | |
| Verification Source(s) | | Listing | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | N/A | | | | | |
| Concessions | | None disclosed | | | | | |
| Date of Sale/Time | N/A | Active | -8,200 | | | | |
| Location | Suburban | Suburban | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 7,500 SqFt | 6,000 SqFt | | | | | |
| View | Residential-Avg | Similar | | | | | |
| Design (Style) | Conventional | Conventional | | | | | |
| Quality of Construction | Average | Similar | | | | | |
| Actual Age | 21 Yrs. | 40 Yrs. | | | | | |
| Condition | Average | Minor Repairs | +15,000 | | | | |
| Above Grade | Total | Bdrms | Baths | Total | Bdrms | Baths | Total | Bdrms | Baths | | Total | Bdrms | Baths | |
| Room Count | 7 | 3 | 2 | 7 | 3 | 2 | | | | | | | | |
| Gross Living Area | 25.00 | 1,287 sq. ft. | 1,289 sq. ft. | 0 | sq. ft. | 0 | sq. ft. | 0 |
| Basement & Finished | None | None | | | | | |
| Rooms Below Grade | N/A | N/A | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | FWA C/Air | Similar | | | | | |
| Energy Efficient Items | Average | Average | | | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | | | | |
| Porch/Patio/Deck | Porch/Patio | Similar | | | | | |
| Days on Market | N/A | 42 DOM | | | | | |
| Fireplace | 1 FP | None | +1,000 | | | | |
| Other | None | Pool/Inf Landsc. | 0 | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - $ | 7,800 | ☒ + ☐ - $ | 0 | ☒ + ☐ - $ | 0 |
| Adjusted Sale Price | | Net Adj. 3.8% | | Net Adj. 0.0% | | Net Adj. 0.0% | |
| of Comparables | | Gross Adj. 11.8% $ | 212,700 | Gross Adj. 0.0% $ | 0 | Gross Adj. 0.0% $ | 0 |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 06/29/2001 | 06/04/1999 | | |
| Price of Prior Sale/Transfer | $227,500 | $167,000 | | |
| Data Source(s) | Realist | Realist | | |
| Effective Date of Data Source(s) | 02/05/2009 | 02/05/2009 | | |
| Summary of Sales Comparison Approach | | | | |

Freddie Mac Form 70 March 2005

Produced by ACI Software, 800 234 8727 www.aciweb.com

Fannie Mae Form 1004 March 2005
1004_04UAD

**ADDENDUM**

| | | |
|---|---|---|
| Borrower: Heligren, Mark F | | File No.: 93400265 |
| Property Address: 544 Veronica Pl | | Case No.: |
| City: Escondido | State: CA | Zip: 92027 |
| Lender: Mark Heligren | | |

**Explanatory Comments**

Adjustments for minor differences in site size are not necessary as the typical buyer in the subject's market area shows no clear cut preference for a slightly larger or smaller lot as long as the site is typical for the area and has typical utility.

No adjustments for actual age, room count, and gross living area under 100 SqFt were warranted as there is insufficient data in the subjects market area to justify such an adjustment.

It was necessary to exceed the desired net/gross adjustment parameters due to limited sales of homes similar to the subject. The sales selected were the best available at the time of the appraisal and are considered to be good indicators of market value.

Sean Ring has assisted in the data gathering process, inspection of the subject, comparable sales analysis, and the preparation of the report and is both qualified and competent to do so.

All comparable sales chosen have meaningful attributes and a blended value conclusion was utilized. The sales selected are the best available for comparison. A complete and thorough search was made by the appraiser, and the sales chosen are considered to be the best available indicators of market value for the subject. Sales comparison adjustments are not based on cost. Adjustments are extracted from the market through use of the paired sales analysis and reflect the typical buyer's response to various amenities. All closed sales in the date of sale/time located in the sales comparison approach are based on Close of Escrow. All other sales comparison adjustments should be self-explanatory.

Multiple listing service (MLS) photos and/or data photos may have been utilized in this report due to circumstances beyond the control of the appraiser (I.E. Private gated communities, people in front of the property, obstructed view, etc.) the photos found in mls are deemed a good and reliable source of information as they better represent the property as of the original transaction date. The appraiser has inspected the exterior of the properties.

Personal property was not included in the appraised value.

Current and future employment or compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of this client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

This appraisal report was completed in conformity with the Uniform Standards of Professional Appraisal Practice.

The appraiser certifies that this appraisal includes an electronic/digital signature that is maintained and controlled by the appraiser through forsythe appraisals, inc. The appraiser has given authorization to apply the digital signature to this report.

Confidentiality and security policy in compliance with the gramm-leach-bliley act.

We consider privacy to be fundamental to our relationship with clients. We are committed to maintaining the confidentiality, integrity, and security of client's personal information. Internal policies have been developed to protect this confidentiality, while allowing client's needs to be served.

This report is believed to be complete and accurate. However, should any error be subsequently discovered we reserve the right to correct it.

We restrict access to personal information to authorized individuals who need to know this information to provide service and products for you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to protect your nonpublic personal information. We do not disclose this information about you or any former consumers or customers to anyone, except as permitted by law. The law permits us to share this information with our affiliates. The law also permits us to share this information with companies that perform marketing services for us, or other financial institutions that have joint marketing agreements with us.

When we share nonpublic information referred to above, the information is made available for limited purposes and under controlled circumstances. We require third parties to comply with our standards for security and confidentiality. We do not permit use of consumer/customer information for any other purpose nor do we permit third parties to rent, sell, trade or otherwise release or disclose information to any other party.

## SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Hallgren, Mark E | File No.: 93400265 |
| Property Address: 544 Veronica Pl | Case No.: |
| City: Escondido | State: CA Zip: 92027 |
| Lender: Mark Hallgren | |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: February 12, 2009
Appraised Value: $ 210,000



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: Hallgren, Mark E | | | |
|---|---|---|---|
| Property Address: 544 Veronica Pl | | File No.: 93400285 | |
| City: Escondido | | Case No.: | |
| Lender: Mark Hallgren | State: CA | | Zip: 92027 |



COMPARABLE SALE #1

2754 Diaz Gln
Escondido, CA 92027



COMPARABLE SALE #2

2722 Diaz Gln
Escondido, CA 92027



COMPARABLE SALE #3

464 Las Brisas Dr
Escondido, CA 92027

## COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: Hallgren, Mark E. | | File No.: 93400265 |
| Property Address: 544 Veronica Pl | | Case No.: |
| City: Escondido | State: CA | Zip: 92027 |
| Lender: Mark Hallgren | | |



COMPARABLE SALE #4

2175 Weatherby Ave
Escondido, CA 92027

COMPARABLE SALE #5

COMPARABLE SALE #6

Forsythe Appraisals, LLC.

| Borrower: Hellgren, Mark E | | File No.: 93400285 | |
|---|---|---|---|
| Property Address: 844 Veronica Pl | | Case No.: | |
| City: Escondido | State: CA | | Zip: 92027 |
| Lender: Mark Hellgren | | | |



Living Room



Kitchen



Dining Room

## DIMENSION LIST ADDENDUM

| | | |
|---|---|---|
| Borrower: Hallgren, Mark E | | File No.: B3400285 |
| Property Address: 544 Veronica Pl | | Case No.: |
| City: Escondido | State: CA | Zip: 92027 |
| Lender: Mark Hallgren | | |

| | | |
|---|---|---|
| GROSS BUILDING AREA (GBA) | | 1,287 |
| GROSS LIVING AREA (GLA) | | 1,287 |

| Area(s) | Area | % of GLA | % of GBA |
|---|---|---|---|
| Living | 1,287 | | 100.00 |
| Level 1 | 1,287 | 100.00 | 100.00 |
| Level 2 | 0 | 0.00 | 0.00 |
| Level 3 | 0 | 0.00 | 0.00 |
| Other | 0 | 0.00 | 0.00 |
| | GBA | | |
| Basement | ☐ | 0 | |
| Garage | ☐ | 441 | |

| Area Measurements | | | | Area Type | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Measurements | Factor | Total | | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
| 28.00 x 28.00 | x 1.00 | = 728.00 | | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 21.00 x 13.00 | x 1.00 | = 273.00 | | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 22.00 x 13.00 | x 1.00 | = 286.00 | | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 21.00 x 21.00 | x 1.00 | = 441.00 | | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

FLOORPLAN



| Borrower: Hallgren, Mark E | | File No.: 93400285 | |
| Property Address: 544 Veronica Pl. | | Case No.: | |
| City: Escondido | State: CA | | Zip: 92027 |
| Lender: Mark Hallgren | | | |

**LOCATION MAP**

| Borrower: Hallgren, Mark E | | File No.: 93400265 | |
| Property Address: 544 Veronica Pl | | Case No.: | |
| City: Escondido | State: CA | | Zip: 92027 |
| Lender: Mark Hallgren | | | |



PLAT MAP

| Borrower: Hallgren, Mark E. | | File No.: 93400285 | |
|---|---|---|---|
| Property Address: 544 Veronica Pl | | Case No.: | |
| City: Escondido | State: CA | | Zip: 92027 |
| Lender: Mark Hallgren | | | |



Forsythe Appraisals, LLC

| Borrower: Hallgren, Mark E | | File No.: 93400285 |
|---|---|---|
| Property Address: 544 Veronica Pl | | Case No.: |
| City: Escondido | State: CA | Zip: 92027 |
| Lender: Mark Hallgren | | |



Forsythe Appraisals, LLC

| Borrower: Hallgren, Mark E | | File No.: 93400285 |
| Property Address: 644 Veronica Pl | | Case No.: |
| City: Escondido | State: CA | Zip: 92027 |
| Lender: Mark Hallgren | | |

## ACORD CERTIFICATE OF LIABILITY INSURANCE

# EXHIBIT C

DECLARATION OF JOSEPH WEAVER

IN SUPPORT OF VALUATION OF REAL PROPERTY

BANKRUTPCY CASE NO. 09-03586-13

I, JOSEPH WEAVER, declare:

1.   I am a real estate appraiser, State of California License #AR040244.  I make this declaration based on my own personal knowledge, my education, my training and experience in the field of real estate appraisal and if called as a witness, I could and would competently testify thereto the facts stated herein.

2.   I have held a California Real Estate Appraiser License since 2007 and have been doing residential real estate appraisals since 2003.  I am actively employed as a real estate appraiser and perform approximately 35 to 40 residential appraisals per month.

3.   In February 2009 I was retained by Debtor to examine and appraise a single family residence located at 544 Veronica Pl., Escondido, CA 92027 (the "Property").  Attached as Exhibit "D" is a true and correct copy of the Appraisal of Real Property report I prepared with respect to the Property.

4.   In determining the fair market value of the Property, I used both the sales comparison approach and the cost approach, with the greater weight given to the sales comparison approach.  I consider the sales approach to be the most reliable in determining the fair market value because it more accurately simulates buyer's perceptions and actions.

5.    Based upon my observations, inspection of the subject property, and market research as well as my training, education and experience as a residential appraiser, it is my professional opinion that the Property has a fair market value of $210,000.00 as of February 12, 2009.

6.    I have no present or contemplated future interest in the Property.  Neither my employment nor my compensation for the appraisal is contingent on the value found.  I have no familial or personal relationship with Debtor other than the preparation of this appraisal.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 30, 2009 at San Diego, California.

_____
JOSEPH WEAVER

- 14 -

# EXHIBIT D

| ACCOUNT NUMBER | | DUE DATE | AMOUNT DUE |
|---|---|---|---|
| ****0102 | | Sep 01 08 | $1,455.93 |

| | | AFTER THIS DATE | PAY THIS AMOUNT |
|---|---|---|---|
| | | Sep 16 08 | $1,528.73 |

Mark E Haligren

EXCESS FUNDS RECEIVED UNLESS OTHERWISE NOTED WILL BE APPLIED TO OUTSTANDING LATE CHARGES AND THEN TO ADDITIONAL PRINCIPAL

ADDITIONAL PRINCIPAL $ _____

ADDITIONAL ESCROW $ _____

LATE CHARGE $ _____

OTHER $ _____

TOTAL PAYMENT $ _____

PROVIDENT FUNDING ASSOCIATES
P O BOX 54957
LOS ANGELES CA 90054-0957

15150601027 0901080916080000145593 0000007280 5

After Recording Return To:
**PROVIDENT FUNDING ASSOCIATES, L.P.**
**PO BOX 5913**
**SANTA ROSA, CA 95402-5913**
Loan No. 1515060102

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

MIN 1000179-1515060102-7

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated  7/6/2005    , together with all Riders to this  document.
(B)  "**Borrower**" is    MARK E HALLGREN, A SINGLE MAN . Borrower is the trustor under this Security Instrument.

(C)   "**Lender**" is    PROVIDENT FUNDING ASSOCIATES, L.P.. Lender is a LIMITED PARTNERSHIP
organized and existing under the laws of CALIFORNIA. Lender's address is 5353 MISSION CENTER ROAD,
SUITE 222, SAN DIEGO, CA 92108.
(D)   "**Trustee**" is FIRST AMERICAN TITLE COMPANY
(E)   "**MERS**" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security
Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)   "**Note**"   means the promissory note signed by Borrower and dated 7/6/2005.  The Note states that Borrower
owes Lender TWO HUNDRED SIXTY THOUSAND AND 00/100 Dollars (U.S. $260,000.00 ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
8/1/2035.
(G)   "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property".
(H)   "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01  (page 1 of 13 pages)

0010CA.doc - 5/17/2002 2:22 PM
P - 7/6/2005                                                                                                 Ver. 1

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the county of SAN DIEGO

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**

which currently has the address of    544 VERONICA PL
ESCONDIDO, CALIFORNIA 92027
("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property". Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01  *(page 3 of 13 pages)*

0010CA doc - 5/17/2002 2:22 PM
p - 7/6/2005                                                                                                        **Ver. 1**

# EXHIBIT E

2009-04-012124                  »»      8186125700

P 4/7

## Bank of America
BANK OF AMERICA, N.A.
P.O. BOX 26078
GREENSBORO, NC 27420

Account Number: ████████5199
**Page 1 of 2**

| Variable Rate Snapshot | |
|---|---|
| Statement Period: 01/22/2009-02/18/2009 | |
| Previous Outstanding Variable Balance: | $28,515.37 |
| New Outstanding Variable Balance: | $26,386.61 |
| Credit Limit: | $125,584.00 |
| Total Principal Balance: | $125,886.96 |
| Available Credit: | $0.00 |
| Current Payment Due: | $74.24 |
| Past Due Amount: | $508.37 |
| Total Minimum Payment Due: | $582.61 |
| Payment Due Date: | 03/18/2009 |

Payment shown above does not include Fixed Rate Loan Options. Any Fixed Rate Loan Options you have will be billed separately.

* 0224872 000050002 054952-P1 P7
MARK E HALLGREN
544 VERONICA PL
ESCONDIDO CA 92027-2869

---

### Bank of America Equity Maximizer

**Account Summary**

| Account Type | Principal Balance | Account Number |
|---|---|---|
| Variable Rate: | $26,007.00 | ████████4199 |
| Fixed Rate Loan Option 01 | $97,859.38 | ████████4101 |

Information about your transactions are included on the next page of this statement.

**Variable Rate Portion Summary**

| | |
|---|---|
| ANNUAL PERCENTAGE RATE | 2.99% |
| Daily Periodic Rate | .0081917% |
| Corresponding Annual Percentage Rate | 2.99% |
| Days in Billing Cycle | 28 |
| Periodic FINANCE CHARGE | $64.24 |
| Other FINANCE CHARGE | $0.00 |
| Outstanding Fees (due upon payoff) | $0.00 |
| Deferred Extension Interest | $0.00 |

### Messages
We have not received your most recent line of credit payment. Your minimum payment due is listed on your payment coupon. If you have made a payment recently, please accept our thanks.

### Customer Service Information



www.bankofamerica.com

1-800-671-1044 Customer Service
TDD 1-800-345-1260
Se habla Espanol: 1-800-621-1044
Customer Service Hours:
Monday through Friday
8:00 a.m   8:00 p.m. Eastern Time



Bank of America, N.A.
P.O. Box 21848
Greensboro, NC 27420 1848

---

### Payment Coupon - Please return with your payment

MARK E HALLGREN

| | |
|---|---|
| Equity Maximizer Number: | ████████5199 |
| Current Payment Due: | $74.24 |
| Past Due Amount: | $508.37 |
| Total Minimum Payment Due: | $582.61 |
| Payment Due Date: | 03/18/09 |

| | |
|---|---|
| **Minimum Payment Due** | **$582.61** |
| Additional Principal: | $ |
| Payment Enclosed: | $ |

Make Check Payable to:

Bank of America, N.A.
P.O. Box 30750
Los Angeles, CA 90030-0750

In order to receive your payment by the due date, we suggest mailing at least five (5) business days prior to that date. Please refer to important disclosures, account and payment information found elsewhere on this statement.

9100000000058261    682490073341990    547930808

‖:547930808‖:68 24900 7334 199‖‖

2009-04-01 21:24         >>      8186125700                                                    P 3/7

# Bank of America

Bank of America, N.A.
P O Box 26078
Greensboro NC 27420-6078

| Loan Account Number: | 4101 |
|---|---|
| Statement Period: 02/02/09 | |

## Loan Snapshot

| | |
|---|---|
| Maturity Date: | 10/17/2031 |
| Prior Statement Ending Principal Balance: | $97,859.95 |
| New Ending Principal Balance: | $97,859.95 |
| Previous Year's Interest Paid: | $4,172.75 |
| Scheduled Payment Amount: | $728.56 |
| Borrower's Protection Plan Amount: | $0.00 |
| Payment Due: | $728.56 |
| Amount Past Due: | $4,371.36 |
| Total Fees and Charges Outstanding: | $0.00 |
| Total Payment Amount Outstanding: | $5,099.92 |
| Payment Due Date: | 02/17/09 |

MARK E HALLGREN
544 VERONICA PL
ESCONDIDO CA 92027-2669

It is our pleasure to service this account for you. Please contact us at any time if you require assistance. Thank you for being an important part of Bank of America. We appreciate your business and value you as a customer.

---

### Bank of America Installment Loan

## TRANSACTION ACTIVITY

| Effective Date | Description | Principal | Finance Charge | Borrowers Protection Plan | Fees and Charges | Total Transaction |
|---|---|---|---|---|---|---|
| Payments received and posted after the statement date above will be reflected on next month's billing statement. | | | | | | |

---

### Customer Service Information



www.bankofamerica.com

1.800.621.1044 Customer Service
TDD 1.888.345.1280
Se habla Español: 1.800.621.1044
Customer Service Hours:
Monday through Friday
8:00 a.m.-9:00 p.m. Eastern Time

Or you may write to:
Bank of America, N.A.
P.O. Box 21848
Greensboro, NC 27420-1848

IMPORTANT CREDIT BUREAU REPORTING INFORMATION REQUIRED BY FEDERAL LAW TO BE DISCLOSED TO YOU. WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.

---

### Payment Coupon – Please return with your payment

MARK E HALLGREN

| | |
|---|---|
| Check box for change of address (over) | Check box if you are paying off the loan |

Account Number: 4101
Payment Due Date: 02/17/09
Scheduled Payment Amount: $728.56
Borrower's Protection Plan: $0.00
Payment Due: $728.56

| Minimum Payment Due | $728.56 |
|---|---|
| Additional Principal: | $ |
| Payment Enclosed: | $ |

Make Check Payable to:

In order to receive your payment by the due date, we suggest mailing at least five (5) business days prior to the due date. See reverse side for important payment information.


Bank of America, NA
P. O. Box 30750
Los Angeles, CA 90030-0750

010000000072856    682490073341016    544930801

＂544930801＂68249007334101＂

# BANK OF AMERICA EQUITY MAXIMIZER AGREEMENT
# AND DISCLOSURE STATEMENT

**Property Serving as Security (the "Property"):** 544 VERONICA PL, ESCONDIDO, SAN DIEGO, CALIFORNIA 92029

**Borrower's Name and Address:** MARK E HALLGREN, 544 VERONICA PL, ESCONDIDO, CALIFORNIA 92027-2451

**Lender's Name and Address:** Bank of America, NA, National Banking Association, 100 North Tryon Street, Charlotte, North Carolina 28255

| | | |
|---|---|---|
| **Date:** OCTOBER 11, 2006 | **Annual Percentage Rate:** 7.9900 | **Draw Period:** 120 Mos. |
| **Loan Number:** 1199 | **Margin:** -.2600 | **Repayment Period:** 180 Mos. |
| **Maturity Date:** OCTOBER 11, 2031 | **Max. Interest Rate:** 24.0000 | **Billing Cycle:** MONTHLY |
| **Credit Limit:** $ 135,584.00 | | |

1.   **Introduction.** This Bank of America Equity Maximizer Agreement and Disclosure Statement ("Agreement") governs your Home Equity Line of Credit Account (your "Credit Line" or "Account") with the lender named above ("Lender"). Your Account is a revolving credit arrangement in which we make loans to you by advancing funds ("Advances") at your direction, allowing you to repay those Advances and take additional Advances, subject to the terms of this Agreement. This Agreement will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount equal to or less than zero.

In this Agreement, the terms "we," "us," "our" and "Bank" refer to the Lender or to any subsequent assignee or transferee. Except as noted below, the terms "you," "your," "yours" and "Borrower" refer to each person that signs this Agreement or has authority to use the Credit Line. Read this Agreement carefully so that you know how your Account works and keep a copy of this Agreement for your records.

2.   **Borrower's Promise to Pay.** You promise to pay to Lender the total of all Advances plus FINANCE CHARGES, together with all fees and charges under the terms of this Agreement. You will pay your Account according to the terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

3.   **Term.** The term of your Account will begin as of the date of this Agreement ("Opening Date") and will continue until all indebtedness under this Agreement, if not already paid pursuant to the payment provision below, will be due and payable upon maturity. The Draw Period of your Account will begin on the date after the Opening Date, when this Agreement is accepted by us in the State of North Carolina, following the perfection of the Security Instrument and the meeting of all of our other conditions and will continue for one hundred and twenty (120) months. You may obtain credit advances during the Draw Period. After the Draw Period ends, the Repayment Period will begin, and you will no longer be able to obtain credit advances. The length of the Repayment Period is one hundred and eighty (180) months depending on the repayment schedule set forth below.  You agree that we may renew or extend the period during which you may obtain credit advances or make payments.

4.   **Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of      ONE HUNDRED THIRTY-FIVE THOUSAND FIVE HUNDRED EIGHTY-FOUR AND 00/100      ($135,584.00                         ) which will be your Credit Limit under this Agreement. You may not request an Advance from your Account that would cause your outstanding balance of Advances to exceed your Credit Limit nor are we obligated to pay any Advance request that would cause your outstanding balance of Advances to exceed your Credit Limit. If we do make an Advance that causes your outstanding balance of Advances to exceed your Credit Limit, this will not constitute an increase in your Credit Limit. You agree to immediately repay the amount by which your outstanding balance of Advances exceeds your Credit Limit.

5.   **Security.** All amounts due under the Account are secured by a mortgage, deed of trust, or security deed ("Security Instrument") on the Property identified on page one of this Agreement. Borrower agrees to pay all amounts due, and perform all covenants and obligations required of Borrower under the Security Instrument. If it becomes necessary for us to advance funds to you above the Credit Limit to protect our security interest, those amounts in excess of the Credit Limit will be owed by you and will be secured by the Security Instrument unless Applicable Law prohibits the same. The Security Instrument and this Agreement are related documents and a default under either document will be treated as a default under both documents. To the extent permitted by Applicable Law, the lien of the Security Instrument will continue and will have the same priority if, with your consent, we renew, extend, amend and modify or substitute this Agreement. In such event, you agree to execute any additional documents necessary to achieve the action being taken.

6.   **Terms And Definitions.** The following terms are defined as set forth in this Section. Other terms are defined elsewhere in this Agreement.

   A.   **"Billing Cycle"** is an interval of time that occurs regularly during the term of this Agreement and is used to determine the FINANCE CHARGES and other fees, charges, and credit insurance premiums that are due on your Account. The number of days in each Billing Cycle may vary from time to time. A Billing Cycle occurs regardless of whether there is a balance or any activity on your Account. Your Billing Cycle is stated on page 1 of this Agreement.

   B.   **"Billing Statement"** is a statement that we will furnish to you periodically that provides important information regarding your Account activity.

   C.   **"Credit Limit"** is the maximum aggregate amount of principal that we will extend to you under this Agreement. Your Credit Limit may change under certain circumstances. Your Credit Limit is stated on page 1.

   D.   **"Draw Period"** is the period of time during which you may request Advances from your Account. The Draw Period is stated on page 1.

   E.   **"Maturity Date"** is the date on which the entire Account Balance under this Agreement is due. The Maturity Date of your Account is stated on page 1.

   F.   **"Minimum Payment"** is the minimum amount you must pay on your Credit Account, as reflected on each periodic Billing Statement for each Billing Cycle. Your Minimum Payment during the Draw Period and during the Repayment Period will be calculated as described below under the heading "Payments."